## BENFORD, GUARDIAN, v. GIBSON, BY NEXT FRIEND.

1. The act of February 18th, 1848, "prescribing and regulating the fees of the judges, and clerks of the county courts of this state," operates, as well on the judges in office at the time of its passage, as on those subsequently appointed.

2. Appointments to public offices, created by a state legislature, are not considered contracts, in the sense of that term, as used in the 10th section, of the 1st article of the constitution of the United States.

3. The legislature of a state may increase or diminish the compensation, allowed its public officers, without any other restraint, than that imposed by its own constitution.

4. The act of February 18th, 1848, "prescribing and regulating the fees of the judges, and clerks of the county courts of this state," does not violate any provision of the constitution of this state, or of the United States.

Error to the Orphans' Court of Dallas. Before the Hon. A. J. Saffold, Judge.

Benford v. Gibson.

THE facts of this case are sufficiently set out in the opinion of the court.

G. W. GAYLE, for defendant in error.

The acceptance of the office of judge of the county court, and clerk of said court, completes a contract between the citizen and the state, that the officer will, during the term of his office, discharge all the duties of his office required by law, and that he shall have for the discharge of such duties, the compensation *then* prescribed by law, during the term of his office. Is the acceptance a contract between the state and citizen? A contract is the offer on one side, and an acceptance on the other, for a consideration. The state creates the office, and creates the fees, and holds both out to the community for acceptance. It is the compensation *then* allowed, which induces the acceptance. A state can contract with its citizens. Every act of incorporation is a contract with the citizens, and so held by the courts. See authorities cited in Governor v. Dale, 3 Stew. 387. If the judges and clerks then went into office under a contract to receive, during their term, stipulated fees, the act of 1848, reducing them, violates paragraph 1 of the 10th sec. 1 art. of Con. U. S., which reads—"No state shall pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts." It also violates the 19th sec. of the Bill of Rights of the constitution of Ala. which reads, "No *ex post facto* law, nor law impairing the obligation of contracts shall be made." If this be a contract, then, as rights once vested, cannot be withdrawn, the act of 1848 is void. 3 Ark. R. 285; 13 Vermont, 225; Walker's (Mi.) Rep. 146.

The case of Runnels v. The State, decides, that the legislature cannot abolish the office of clerk, and transfer his duties to the judge. This reporter is not in Montgomery, but the decision, doubtless, is, that the clerk had a vested right to the office. If he has, the legislature cannot *abolish* the fees, as that would virtually abolish the office. See Smede's (Mi.) Dig 153, § 2.

The legislature cannot diminish the *salaries* or *compensation* of judges during their term of office. The decisions on this question turn on a provision in the state constitution;

Benford v. Gibson.

but these constitutional provisions are declaratory merely of their rights, under the provision of the federal constitution. I cite the authorities, as there is much in them, otherwise bearing on this question. 5 Watts & Sergt. 403 ; 4 Arkansas Rep. 220 ; 3 Stewt. 387

DARGAN, J.—Benford, the guardian of Gibson, filed his accounts and vouchers, for final settlement, in the orphans' court of Dallas; and one of the charges against the ward, was a bill of costs, amounting to twelve dollars and twenty-five cents, paid to the judge of the county court, as fees, for services rendered. It was admitted, that the services were rendered subsequent to the act of 18th of February, 1848, but were charged in conformity with the act of 1843, and not in accordance with the act of 1848.

The ward objected to the allowance of this account against him; but the objection was overruled, and he excepted. The act of 1848 reduces the fees of the judges of the county courts, and was evidently intended to operate, as well on those judges in office, at the time of its passage, as on those who might be afterwards appointed ; and the only question is, whether the act is unconstitutional, so far as it contemplates a reduction of the fees of the judges then in office.

It is contended, that by the acceptance of the office, a contract between the judge and the state was consummated ; that he should perform the duties attached to his office, and receive the fees as then regulated by law ; and that a reduction of the fees violates the obligations of this contract.

The tenth section of the first article of the constitution, prohibits a state from passing any law, violating the obligations of a contract. But the appointment to office, by a state government, cannot be considered a contract, in the sense of the term, as used in the constitution of the United States.

The creation of offices, and the appointment of officers, to discharge public duties, are indispensible to the administration of the government ; and these offices may be *abolished*, and new ones created, as the public good may require ; so may the duties be enlarged or diminished, at the will of the legislature, without violating the constitution of the United States. The history of the legislation of all the states,

might be cited in proof of this proposition. But if it be true, that the appointment to office by a state government, creates a contract, between the appointee and the state, then not only have all the states erred, in exercising powers, denied to them; but, what is of more importance, when once the state government is organized, and its officers appointed, it has not the power to remodel, or alter either the duties. or the tenure of their officers, without the consent of the incumbents, *however urgent the necessity* of abolishing old offices, and creating new ones, or of increasing or altering the duties of the offices: this prerogative, which ever has been exercised by all governments, as public interest and convenience *requires*, is subjected to the will of the incumbents of office. We cannot believe that such a restraint was intended to be imposed on the state governments, in the exercise of a power, indispensably necessary to the public good. And if a state may abolish an office, without violating the constitution of the United States, or alter the tenure, by which, it is holden, or increase or diminish the duties of the officer, then it is manifest, that the appointment to office cannot be considered a contract; the obligations of which are protected by the tenth section of the first clause of the constitution of the United States; and if not a contract, in the sense of the term, as used in that instrument, then the legislature of a state may increase, or diminish, the salaries, or perquisites of their officesr, as it may seem fit, without any restraint, save that imposed by its own constitution.

In the case of Haynes v. The State, 3 Humph., the supreme court of Tennessee said, the legislature has the power to modify, or reduce the compensation of public officers, during their continuance in office, in all cases, unless such power is taken away by express provision of the constitution of the state; and in the case of The State v. Drew, Charlton's Rep., it is said, that the officers of government have no proprietary interest in their offices, and their duties and *rights* (which are the consequence of their duties,) may be changed, during their continuance in office. So, in the case of Warner v. The State, 2 Denio, 272, chancellor Walworth says, " that if the constitution provides for the appointment of an officer, in a particular manner, the legislaiure cannot create a

new officer to discharge the same duties, and direct the appointment in a different manner, but the legislature may add to or diminish the duties and fees of the officer." Thus holding, that the legislature of a state, in creating offices, and regulating the fees and perquisites of the officers, is restrained by the constitution of the state only. These authorities, in our judgment, lay down the correct rule ; and without undertaking to define every contract, the obligations of which would be protected by that clause of the constitution of the United States, we are satisfied, that the appointment to office, by a state government, is not to be considered as a contract, in the sense of that term, as used by the framers of the constitution.

It results from this, that the orphans' court erred in allowing this account, as a charge against the ward, and the decree must be reversed, and the cause remanded.